Slip Op. 19–51

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SHANGHAI SUNBEAUTY TRADING CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN HONEY PRODUCERS ASSOCIATION, *et al.*, <br><br> Defendant-Intervenors. | Court No. 18-00022 <br><br> Before: Richard K. Eaton, Judge <br><br> **PUBLIC VERSION** |

**OPINION**

[Plaintiff's motion for judgment on the agency record is denied; United States Department of Commerce's final results of administrative review are sustained.]

Dated: April 29, 2019

*Fei He*, Law Offices of He & Associates, P.C., of Irvine, CA, for Plaintiff.

*Kara M. Westercamp*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With her on the brief were *Joseph H. Hunt*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Reginald T. Blades, Jr.*, Assistant Director. Of Counsel on the brief was *Natan Tubman*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

*Michael J. Coursey*, *R. Alan Luberda*, and *Melissa M. Brewer*, Kelley Drye & Warren LLP, of Washington, DC, for Defendant-Intervenors.

Eaton, Judge: This case involves the final results of the United States Department of Commerce's ("Commerce" or the "Department") fifteenth administrative review of the

antidumping duty order on honey from the People's Republic of China. *See Honey From the People's Rep. of China*, 83 Fed. Reg. 1015 (Dep't Commerce Jan. 9, 2018) ("Final Results"), and accompanying Issues and Dec. Mem. (Jan. 3, 2018), P.R. 75 ("Final IDM"). In the Final Results, Commerce determined that Plaintiff Shanghai Sunbeauty Trading Co., Ltd. ("Plaintiff" or "Sunbeauty"), a honey exporter from China, was not entitled to a separate rate[1] because the record showed that "Sunbeauty's entries of subject merchandise were reported to [U.S. Customs and Border Protection] as not being subject to [antidumping] duties, and thus, Sunbeauty ha[d] no suspended entries" during the period of review. Final IDM at 11.

By its motion for judgment on the agency record, Sunbeauty disputes Commerce's finding that it was not entitled to a separate rate as unsupported by substantial evidence and otherwise not in accordance with law. *See* Pl.'s Br. Supp. Mot. J. Agency R., ECF No. 26 ("Pl.'s Br."); Pl.'s Reply Supp. Mot. J. Agency R., ECF No. 33.

Defendant the United States, on behalf of Commerce, and Defendant-Intervenors American Honey Producers Association and Sioux Honey Association urge the court to sustain the Final Results. *See* Def.'s Resp. Mot. J. Agency R., ECF No. 31; Def.-Ints.' Resp. Opp'n Pl.'s Mot. J. Agency R., ECF No. 30.

Jurisdiction is found under 28 U.S.C. § 1581(c) (2012) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012). Because Commerce's determination that Sunbeauty was not entitled to a separate rate was

---

[1] In proceedings involving non-market economy countries, such as China, "the Department begins with a rebuttable presumption that all companies within the country are subject to government control and, thus, should be assigned a single antidumping duty deposit rate." *Initiation of Antidumping and Countervailing Duty Admin. Rev.*, 82 Fed. Reg. 10,457, 10,458 (Dep't Commerce Feb. 13, 2017); *see Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997). Applying that presumption here, Commerce determined that Sunbeauty was a part of the China-wide entity, which is subject to the rate of $2.63 per kilogram. *See* Final IDM 9-10.

supported by substantial evidence and in accordance with law, the court denies Plaintiff's motion for judgment on the agency record and sustains the Final Results.

## BACKGROUND

Honey from the People's Republic of China has been subject to an antidumping duty order since 2001. *Honey From the People's Rep. of China*, 66 Fed. Reg. 63,670 (Dep't Commerce Dec. 10, 2001) (the "Order"). Seeking to establish its entitlement to a separate rate by way of an administrative review, Sunbeauty, on December 28, 2016, asked Commerce to initiate a review of the Order.[2] *See* Req. Admin. Rev. (Dec. 28, 2016), P.R. 1.

On February 13, 2017, Commerce initiated the fifteenth administrative review of the Order, covering imports entered during the December 1, 2015, to November 30, 2016 period of review. *See Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 82 Fed. Reg. 10,457, 10,460 (Dep't Commerce Feb. 13, 2017) ("Initiation Notice"). Upon initiation of the review, Commerce notified parties that "all firms listed" in the Initiation Notice, including Sunbeauty, "must complete, as appropriate, either a *separate rate application* or [a] certification [that the firm previously was granted a separate rate, and that the separate rate currently applies]." Initiation Notice, 82 Fed. Reg. at 10,458 (emphasis added). Commerce's separate rate application for the People's Republic of China states: "[T]o be considered for separate-rate treatment, the applicant must have a relevant U.S. sale of subject merchandise to an unaffiliated purchaser, *and, for an administrative review, the applicant also must have a suspended entry of subject merchandise into*

---

[2] Previously, Sunbeauty sought its own dumping margin through a new shipper review of its honey sales. Commerce rescinded the review, however, finding that Sunbeauty had no *bona fide* sales during the period of December 1, 2014, to November 30, 2015—a finding that Sunbeauty appealed, and that this Court sustained. *See Shanghai Sunbeauty Trading Co. v. United States*, 42 CIT __, Slip Op. 18-111 (Sept. 6, 2018).

*the United States during [the period of review].*" People's Rep. of China Separate Rate Application, DEP'T COMMERCE: ENFORCEMENT & COMPLIANCE (Feb. 22, 2019), https://enforcement.trade.gov/nme/sep-rate-files/app-20190221/prc-sr-app-022119.pdf (emphasis added).

On the same day that the review was initiated, Commerce issued an antidumping duty questionnaire to Sunbeauty, the sole mandatory respondent in the review. *See* Final IDM at 1; Admin. Rev. Questionnaire (Feb. 13, 2017), P.R. 5. Section A of the questionnaire sought information regarding, *inter alia*, whether Sunbeauty sold merchandise subject to the Order in the United States during the period of review. *See* Sunbeauty Sec. A Questionnaire Resp. (Mar. 13, 2017), C.R. 1, P.R. 28 at A-1 (Question 1(a)) ("State the total quantity and value of the merchandise under consideration that you sold during the period of review . . . in the United States."). On February 28, 2017, Sunbeauty sought a ten-day extension of time to complete Section A, which Commerce granted. *See* Extension Req. Initial Questionnaire Resp. (Feb. 28, 2017), P.R. 23; Sunbeauty Questionnaire Extension (Mar. 1, 2017), P.R. 25.

In its March 13, 2017 Section A response, Sunbeauty "certified that it made export sale(s) of subject merchandise to the United States during the [period of review]," and included a Customs Entry Summary (Form 7501). *Honey From the People's Rep. of China*, 82 Fed. Reg. 31,557 (Dep't Commerce July 7, 2017) ("Preliminary Results"), and accompanying Preliminary Issues and Dec. Mem. (June 29, 2017), P.R. 59 ("Preliminary Dec. Mem.") at 10; *see* Sunbeauty Sec. A Questionnaire Resp. Ex. A-7.

On March 17, 2017, Commerce asked Sunbeauty to "submit documentary evidence that [it] had a suspended entry of subject merchandise that entered during the [period of review] and

on which [antidumping] duties were deposited."[3] Suppl. Req. Entry Documentation (Mar. 17, 2017), P.R. 32, at 1. Sunbeauty asked for three extensions of time to respond to this request. *See* Sunbeauty Suppl. Entry Doc. Questionnaire Extension (Mar. 20, 2017), P.R. 34; Second Suppl. Entry Doc. Questionnaire Extension (Mar. 24, 2017), P.R. 37; Third Suppl. Entry Doc. Questionnaire Extension (Mar. 29, 2017), P.R. 42. Commerce granted Sunbeauty's three extension requests, in part, and then, on March 30, 2017, "granted Sunbeauty a fourth extension of time, *sua sponte*, in order to aid its analysis of [the suspended entry] issue and provide Sunbeauty an additional opportunity to provide the requested information" until April 7, 2017. Final IDM at 7 n.44; *see* Fourth Suppl. Entry Doc. Questionnaire Extension (Mar. 30, 2017), P.R. 43 at 1. In granting the fourth extension request, Commerce informed Sunbeauty that it would not consider additional requests for an extension of time. *See* Fourth Suppl. Entry Doc. Questionnaire Extension at 2 (stating that "[i]f Sunbeauty is unable [to] submit documentary evidence demonstrating that it currently has a suspended entry of subject merchandise that entered during the [period of review]

---

[3] Where merchandise that is subject to an antidumping duty order is entered, a notation is made on the Customs Entry Summary form by the importer, and liquidation of that entry is administratively suspended. *See* Customs and Border Protection Entry Summary Form 7501 Instructions, U.S. CUSTOMS AND BORDER PROTECTION, https://www.cbp.gov/document/forms/form-7501-instructions (Sept. 8, 2016) (describing, *inter alia*, Entry Type 3); *see also* BLOOMBERG BNA, IMPORT REFERENCE GUIDE § 13.103 (2019) ("When an importer enters merchandise that is subject to an [antidumping duty] . . . order, its mandated cash deposits must be in an amount sufficient to cover estimated [antidumping] . . . duties. [Customs and Border Protection] will suspend liquidation in such cases pending administrative review and possible litigation."). "Type 3" entries are subject to antidumping and countervailing duty orders. In its letter request to Sunbeauty, Commerce stated:

> [Y]ou provided sample sales documents regarding your export(s) to the United States during the period of review . . . , including a Customs and Border Protection . . . Form 7501 Entry Summary. The Entry Summary you provided shows Sunbeauty's export(s) to the United States entered as a Type 1 entry not subject to antidumping . . . or countervailing . . . duties.

Suppl. Req. Entry Documentation (Mar. 17, 2017), C.R. 4, at 1.

and on which [antidumping] duties were deposited, the Department may rescind this review with respect to this company.").

On April 6, 2017, *i.e.*, the day before the fourth extended deadline, Sunbeauty asked for an additional three-week extension of time to submit evidence that it had a suspended entry of subject merchandise during the period of review. *See* Sunbeauty's Fourth Extension Req. (Apr. 6, 2017), P.R. 45. Commerce denied Sunbeauty's request. *See* Letter from Commerce to Sunbeauty re: Sunbeauty Entry Doc. Suppl. Fifth Extension (April 7, 2017), P.R. 46 at 1 (reiterating that Commerce had indicated "in the fourth extension memorandum that we would not be extending further.").

On June 30, 2017, Commerce issued its Preliminary Results, in which it determined, among other things, that "because Sunbeauty was unable to provide evidence of a suspended entry of subject merchandise into the United States during the [period of review] and is, thus, ineligible to receive a separate rate, [Commerce was] preliminarily treating Sunbeauty as part of the [China]-wide entity." Preliminary Results, 82 Fed. Reg. 31,558.

On August 16, 2017, Sunbeauty submitted its case brief, disputing the Preliminary Results on several grounds, including that Commerce's denial of Sunbeauty's fourth request for an extension of time was "arbitrary and unreasonable," and that the Department's treatment of Sunbeauty as part of the China-wide entity was not supported by the record and was otherwise contrary to law. *See* Sunbeauty's Case Brief (Aug. 16, 2017), C.R. 26 at 2. Nowhere in its case brief, however, did Sunbeauty argue that it could show it had a suspended entry during the period of review. Instead, Sunbeauty conceded it could not do so. *See* Sunbeauty's Case Brief at 6 ("Sunbeauty does not possess any document[ary evidence showing a suspended entry during the period of review on which antidumping duties were deposited] . . . because Sunbeauty is the

exporter of the subject merchandise rather than the importer."). Thus, eight months after it asked for the administrative review, Sunbeauty conceded that it could not produce evidence of a suspended entry during the period of review.

On January 3, 2018, Commerce issued the Final Results, having made no changes from the Preliminary Results. *See* Final IDM at 1. This appeal followed.

## STANDARD OF REVIEW

The court will sustain a determination by Commerce unless it is "unsupported by substantial evidence, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Commerce's decision to deny a request for an extension of time is reviewed for abuse of discretion. *See Empresa Nacional Siderurgica, S.A. v. United States*, 19 CIT 337, 341, 880 F. Supp. 876, 879 (1995) (holding Commerce did not abuse its discretion in denying respondent's second request for an extension of time noting, *inter alia*, "the statutory time constraints imposed upon Commerce, [and] its discretion in imposing time limits for responses"); *see also* 19 C.F.R. § 351.302(b) (2017) (providing that Commerce may extend time limits "for good cause").

## DISCUSSION

In the Final Results, Commerce stated that its practice is to require respondents seeking a separate rate in an administrative review to show that they have a suspended entry during the period of review—that is, an entry for which estimated antidumping duties have been deposited, and liquidation has been suspended.[4] *See* Final IDM at 10 (citing *Certain Tissue Paper Products*

---

[4] "*Liquidation* means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1. "[T]he suspension of liquidation creates a

*from the People's Rep. of China*, 73 Fed. Reg. 18,497, 18,500 (Dep't Commerce Apr. 4, 2008) (preliminary results); *Certain Tissue Paper Products from the People's Rep. of China*, 73 Fed. Reg. 58,113 (Dep't Commerce Oct. 6, 2008) (final results unchanged from preliminary results)).

By way of explanation, Commerce stated:

> Suspended entries are required for administrative reviews because of the direct relationship between suspension of liquidation and Commerce's ability to enforce its antidumping duty orders. For a company subject to administrative review, a suspended entry is necessary for Commerce to assess the duties determined in that administrative review. When there is no evidence of a suspended entry, Commerce finds that parties are not eligible for a separate rate because there is no evidence that there is an entry upon which to assess duties.

Final IDM at 10. While this explanation may be of less than crystalline clarity, it is possible to divine Commerce's reasons for requiring a suspended entry as a prerequisite for the determination of a respondent's separate dumping margin in the context of an administrative review. It is, of course, the case that an entry subject to an antidumping duty order is needed for Commerce to determine the export price.[5] That liquidation of the entry be suspended is the natural result of the process by which the entry is made. That is, in the entry papers, the importer declares the merchandise to be subject to an antidumping duty order, and makes a cash deposit of any then-applicable antidumping duties. Once the review is complete, the suspended entry is liquidated at

---

contingent liability on the importer for merchandise subject to an antidumping investigation," or an antidumping duty order, until the investigation or an administrative review of the order is complete. *See* 1 US CUSTOMS AND INTERNATIONAL TRADE GUIDE § 20.05 (2d ed. 2019).

　　　[5]　"Export price and constructed export price refer to the two methods of calculated prices for merchandise imported into the United States. The Department compares these prices to normal values to determine whether goods are dumped." Glossary of AD Terms for Market and Non-Market Economy Cases, DEP'T COMMERCE: ENFORCEMENT & COMPLIANCE, https://enforcement.trade.gov/glossary.htm (Sept. 30, 2004); *see also* 19 U.S.C. § 1677a (export price and constructed export price). The dumping margin is "the amount by which the normal value exceeds the export price or constructed export price of the subject merchandise." 19 U.S.C. § 1677(35)(A).

the determined rate, and, in addition, that rate is applied to the respondent's merchandise entered thereafter.[6] *See* 19 U.S.C. § 1675(a)(2)(C) ("The determination under [§ 1675(a)(2)] shall be the basis for the assessment of . . . antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties."). Were there to be no suspended entry, then it can be assumed that the importer did not declare the merchandise to be subject to the order, and that the respondent would be asking Commerce to review an entry of non-subject merchandise, on which the estimated antidumping duties imposed by the order had not been paid. This is surely not the result intended by a statute the purpose of which is to provide reviews of merchandise subject to an antidumping duty order. *See* 19 U.S.C. § 1675(a); *see also id.* § 1677(25) (defining "subject merchandise" as "the class or kind of merchandise that is within the scope of . . . a review, . . . [or] an [antidumping duty] order").

Here, Commerce found that Sunbeauty failed to show with record evidence that it had a suspended entry during the period of review. Commerce stated:

> The Department has examined all of the information provided by Sunbeauty and finds that Sunbeauty's entries were classified upon entry as not subject to the [Order], and, therefore, not subject to suspension of liquidation. Absent a suspended entry, as outlined in the separate rate application, Sunbeauty is not eligible for a separate rate. In addition to the requirement of a suspended entry, we further note that one of the Department's primary functions in the course of an administrative review is to determine the appropriate antidumping duty margin to apply to subject merchandise, for the purpose of directing [Customs and Border Protection] to liquidate suspended entries of subject merchandise at that rate. Therefore, because the record shows that Sunbeauty's entries of merchandise were made as not being subject to [antidumping] duties, and, thus, Sunbeauty has no suspended entries,

---

[6] "A request for an administrative review results in the continuation of the suspension of liquidation." *Canadian Wheat Bd. v. United States*, 33 CIT 1204, 1208 n.6, 637 F. Supp. 2d 1329, 1334 n.6 (2009) (citation omitted); *see also* 19 C.F.R. § 351.212(b)(1) (stating that, after a review of an antidumping duty order, Commerce "will instruct the Customs Service to assess antidumping duties by applying the assessment rate to the entered value of the merchandise").

consistent with [19 U.S.C. § 1675(a)(2)(C)[7]], the Department is treating Sunbeauty as part of the [China]-wide entity.

Preliminary Dec. Mem. at 11; *see also* Final IDM at 9-10, 11 ("Since [Sunbeauty] could not demonstrate that it had any suspended entries, Commerce's determination that Sunbeauty did not have any reviewable entries is supported by the record.").

Commerce's finding that Sunbeauty did not show it had a reviewable entry during the period of review is supported by substantial evidence and otherwise in accordance with law. Not only does the record evidence support this finding,[8] but by its own admission, Sunbeauty could not satisfy the suspended entry requirement, even though Commerce permitted it to place factual information on the record after the Preliminary Results were issued. *See* Sunbeauty's Case Brief at 6 ("Sunbeauty does not possess any document[ary evidence showing a suspended entry during the period of review on which antidumping duties were deposited] . . . because Sunbeauty is the exporter of the subject merchandise rather than the importer.").

The burden to create the administrative record demonstrating entitlement to separate rate status lies primarily with the parties. *See QVD Food Co. v. United States,* 658 F.3d 1318, 1324 (Fed. Cir. 2011) (citations omitted) ("Although Commerce has authority to place documents in the

---

[7] Section 1675 governs "Administrative Review of Determinations." Subsection 1675(a) addresses "Periodic review of amount of duty." Paragraph 1675(a)(2) pertains to "Determination of antidumping duties," and subparagraph (C) states: "The determination under [1675(a)(2)] shall be the basis for the assessment of . . . antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties." 19 U.S.C. § 1675(a)(2)(C).

[8] Sunbeauty submitted an Entry Summary for entry number [[         ]]. The Entry Summary indicated that the entry was Type 1, which means that the entry was not subject to antidumping or countervailing duties. *See* Sunbeauty Sec. A Questionnaire Resp. Ex. A-7. Consistent with this type of entry, record evidence of correspondence between the customs broker and the importer regarding entry number [[         ]] indicates that no antidumping duties were paid on the entry. *See* Sunbeauty's Fourth Extension Req. (Apr. 6, 2017), C.R. 22, Ex. 1.

administrative record that it deems relevant, the burden of creating an adequate record lies with interested parties and not with Commerce."). Here, Sunbeauty has produced no evidence that it made an entry of merchandise that was suspended, but, indeed, it conceded the point after publication of the Preliminary Results.

Sunbeauty's legal arguments fail to persuade the court that Commerce erred in requiring a suspended entry. First, it argues that the express language of the administrative review statute, in particular § 1675(a)(2)(A), does not require that an entry be suspended, but only that Commerce review "entries of subject merchandise." Pl.'s Br. 7 (quoting and citing 19 U.S.C. § 1675(a)(2)(A), which states that the Department "shall determine– (i) the normal value and export price (or constructed export price) of each entry of the subject merchandise, and (ii) the dumping margin for each such entry," in an administrative review). Under Sunbeauty's reading of the law, a respondent need only show that an entry of subject merchandise was made during the period of review, not that liquidation of the entry was suspended. Thus, for Sunbeauty, the entry summary on the record is sufficient under the law. See Pl.'s Br. 7.

Plaintiff cites no legal authority to support its proposed construction of the administrative review statute. Pl.'s Br. 7-8. This is not surprising. To accept Sunbeauty's interpretation of § 1675(a)(2)(A) would require Commerce to determine a dumping margin for an entry that its importer had represented was not subject to the Order, a result that is not contemplated by the statute. See 19 U.S.C. § 1677(25) (defining "subject merchandise" as "the class or kind of merchandise that is within the scope of . . . a review, [or] . . . an order under this subtitle").

Moreover, accepting Sunbeauty's argument would result in thwarting one of the principal purposes of the review because the resulting antidumping duty rate would not be applied to the entry subject to that review. 19 U.S.C. § 1675(a)(2)(C) ("The determination under [1675(a)(2)]

shall be the basis for the assessment of . . . *antidumping duties on entries of merchandise covered by the determination* and for deposits of estimated duties.") (emphasis added). Thus, while the statute does not explicitly require that an entry be suspended as a prerequisite for establishing entitlement to a review, it does explicitly state the determined rate will be used as the liquidation rate for the reviewed entries. This result can only obtain if the liquidation of entries has been suspended. *See* 19 C.F.R § 159.1 (defining "liquidation"); *see also* 1 US Customs and International Trade Guide § 20.05 (2d ed. 2019) (noting suspension of liquidation creates "contingent liability" for importer pending Commerce's antidumping determination).

In the alternative, Sunbeauty cites Customs and Border Protection regulations that address liquidation generally, and notice requirements when liquidation of an entry is suspended, to contend that liquidation of all entries of subject merchandise are automatically suspended, irrespective of the representations made by the importer of record on the entry documentation. *See* Pl.'s Br. 10 (citing 19 C.F.R. §§ 159.51 and 159.58(a)); Pl.'s Br. 11 ("Because Sunbeauty's honey was within the scope of [the Order] and was obviously entered after [the date of the 2001 Order], its entries shall be suspended and were suspended entries in accordance with laws."). Sunbeauty's entry papers, by failing to acknowledge that its merchandise was subject to the Order, however, serve to claim the reverse, *i.e.*, that its merchandise was not subject to the Order.[9] Therefore, as far as can be determined, the merchandise was liquidated without the imposition of the Order's antidumping duties. Thus, the facts appear to negate Sunbeauty's argument.

Finally, Sunbeauty's argument that Commerce abused its discretion by denying

---

[9] In an email to the importer of record regarding entry number [[            ]], the customs broker stated [[

]]. *See* Sunbeauty's Fourth Extension Req. Ex. 1 (email dated Apr. 4, 2017).

Sunbeauty's fourth request for a fifth extension of time is without merit. Commerce's regulations provide that it may extend deadlines "for good cause," but it is not required to do so. *See* 19 C.F.R. § 351.302(b); *see also Reiner Brach GmbH & Co.KG v. United States*, 26 CIT 549, 559, 206 F. Supp. 2d 1323, 1334 (2002) (citation omitted) ("Commerce clearly cannot complete its work unless it is able at some point to freeze the record and make calculations and findings based on that fixed and certain body of information."). Here, no good cause for extending the deadline could be shown, because Sunbeauty stated that it could not demonstrate that it made an entry whose liquidation was suspended no matter how much time it was given. That is, in its case brief, filed on August 16, 2017, four months after it asked for another three-week extension, Sunbeauty conceded that it could not produce evidence of a suspended entry made during the period of review.

## CONCLUSION

For the foregoing reasons, Commerce's determination that Sunbeauty was a part of the China-wide entity is supported by substantial evidence and is otherwise in accordance with law. Judgment shall be entered accordingly.

/s/ Richard K. Eaton  
Richard K. Eaton, Judge

Dated: April 29, 2019
      New York, New York